IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

DILIP CHOPRA, an individual,

    Plaintiff,

v.

TOWNSEND, TOWNSEND AND CREW LLP, a California limited partnership; DARIN GIBBY, an individual and CHAD HILYARD, an individual;

    Defendants.

---

### VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff Dilip Chopra ("Chopra") complains of DEFENDANTS and alleges as follows:

### JURISDICTION

1. This is an action for attorney malpractice, inter alia, wherein plaintiff's right to relief necessarily depends on resolution of a substantial question arising under the patent laws of the United States of America, Title 35, United States Code, and in particular, 35 U.S.C. § 271, <u>et seq.</u> Jurisdiction is based on 28 U.S.C. § 1338(a). The malpractice alleged occurred within the District of Colorado.

### THE PATENT APPLICATIONS-IN-SUIT

2. The patent applications-in-suit are United States Patent Application No. 09/490,883 ("the '883 Patent Application") filed on January 24, 2000 in the U. S. Patent and Trademark Office ("USPTO") and United States Patent Application No. 09/801,017 ("the '017

Patent Application") filed on March 6, 2001 in the USPTO. True and accurate copies of the '883 and '017 Patent Applications as filed in the USPTO are attached hereto as Exhibit A.

3. The '883 Patent Application is entitled "System and Method for Single-Source, Lowest Price Product Procurement" and includes a method for single-source wholesale product procurement by a retail client system. The method comprises the steps of accessing a server system; downloading a recent product-price list; conducting a product search; building a shopping list of products; saving said shopping list of products as a temporary shopping basket on a desktop of the retail client system; preparing a final product order; completing an electronic check-out from a system software application; uploading said final product order onto a server system; and receiving a confirmation message of said order from said server system.

4. The '017 Patent Application is entitled "System and Method for Providing Lowest Costs Purchasing" and is directed to a system and method for providing products and/or services to consumers from one or more sources or vendors. The system comprises a computer system configured to receive an order from a consumer for a plurality of products or services. The consumer can generate the order using a computing device. The computer system receives the order and electronically searches for prices for each of the products and/or services in the order. The computer system then groups the products and/or services into one or more groups and determines one or more sources or vendors that can provide the one or more groups at a lowest purchase cost. The computer system then helps facilitate the purchase of the products and/or services from the one or more sources or vendors.

## THE PARTIES

5. Plaintiff Dilip Chopra (hereinafter "Chopra") is a resident of the State of Colorado.

6. On information and belief, Defendant Townsend, Townsend and Crew LLP, L.L.C. (hereinafter "TTC") is a limited liability partnership organized under the laws of the State of California which does business under the same name at 1200 Seventeenth Street, Suite 2700, Denver, Colorado 80202. Upon information and belief, TTC is currently doing business in Colorado, through, among other things, by providing legal services to residents of the State of Colorado.

7. On information and belief, Defendant Darin Gibby (hereinafter "GIBBY") is a resident of the State of Colorado and a partner of Defendant TTC.

8. On information and belief, Defendant Chad Hilyard (hereinafter "HILYARD") is a resident of the State of Colorado and was formerly a partner of Defendant TTC.

## BACKGROUND

9. Plaintiff Chopra and a co-inventor Sandeep Sharma expended considerable personal time, effort and money during 1999 developing a novel online ordering system and method (hereinafter sometimes referred to as "technology or online ordering technology").

10. In September 1999, Chopra and Sharma retained the Denver law firm of Patton Boggs to protect this investment by filing a patent application on the technology which had been developed to that point. This patent application is identified above as the '883 Patent Application and was filed on January 24, 2000. Filing fees and attorney fees for preparing and

filing the '883 patent application were in excess of $23,000.

11. In December1999, Chopra, Sharma and other investors formed NutraBuy Inc. ("NutraBuy") for the purpose of receiving additional funding to expedite the online ordering technology's development and to commercialize the technology.

12. In April 2000, TTC was retained by NutraBuy to prosecute the '883 patent application, to file a continuation-in-part ("CIP") patent application and handle other patent matters. The CIP was to cover enhancements to the technology disclosed in the '883 patent application as well as include more "scanner-centric" features to protect the scanner technology being deployed in the field by NutraBuy at that time. NutraBuy had started deployment of 'smart' scanner technology in early 2000. For reasons unknown and not communicated to Plaintiff, the CIP application was never filed by TTC, as acknowledged by David Slone of TTC in his email to Plaintiff's attorney on October 25, 2007. (Exhibit B hereto)

13. On March 6, 2001, Defendant TTC filed the above identified '017 patent application which discloses additional features of the technology disclosed in the '883 patent application as well as technology developed by Chopra in December of 2000 which is referred to as the Optimizer technology. While NutraBuy retained TTC and paid for the filing of the '017 patent application, title to the patent application remained in Mr. Chopra, the inventor of the subject matter claimed in the '017 patent application. TTC was aware of this arrangement as evidenced by the title page of the '017 patent application (see Exhibit A) which identifies the filing entity as Mr. Chopra and which specially recognizes that Mr. Chopra is an Independent Inventor of the subject matter claimed in the '017 patent application. The previously filed '883 patent application was similarly filed with title remaining in the inventors, Chopra and Sharma.

4

14. The Power of Attorney (Exhibit C hereto) filed by TTC in connection with the '017 patent application was signed by Mr. Chopra as an individual and not on behalf of NutraBuy. (Applicant/Inventor box was checked with Assignee box not checked). As such, Mr. Chopra appointed TTC as his attorney, not NutraBuy's attorney, to prosecute the '017 patent application and to transact all business in the Patent and Trademark Office in connection with the '017 patent application, as mentioned in the Power of Attorney. As Mr. Chopra's appointed attorneys, Defendants owed Chopra a fiduciary duty.

15. 37 C.F.R. § 10.40(a) entitled **Withdrawal from employment** governs a patent practitioner's withdrawal from employment before the USPTO in connection with the prosecution of a patent application and provides as follows:

> A practitioner shall not withdraw from employment in a proceeding before the Office without permission from the Office (see §§ 1.36 and 2.19 of the subchapter). In any event, a practitioner shall not withdraw from employment until the practitioner has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, *** including giving due notice to his or her client***, allowing time for employment of another practitioner, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules. (Emphasis added)

16. On May 31, 2002, Chad Hilyard one of the TTC attorneys appointed by Chopra to prosecute his application before the USPTO, filed a Request for Withdrawal as Attorney (See Exhibit D-Request for Withdrawal (hereinafter "Request")). Mr. Hilyard stated in the Request that non-payment of attorney fees was the reason for the requested withdrawal. The Request asked the USPTO to send all future correspondence to Dilip Chopra of NutraBuy and incorrectly identified NutraBuy's address as Mr. Chopra's address. Defendants were not only aware of Mr. Chopra's correct address, Mr. Chopra's address was in fact the actual address designated by

Defendants for the Applicant of the '017 patent application, as evidenced by the Application Data Sheet (ADS-Exhibit E hereto) filed by Defendants in connection with the '017 patent application which sets forth Mr. Chopra's home address of 19702 E. Dorado Avenue, Aurora, Colorado 80015 as the applicant's address. As set forth in Mr. Chopra's attached Declaration (Exhibit F hereto), Mr. Chopra still resides at this address and has resided at this address since October, 1999.

17. On July 18, 2002, the USPTO denied Defendants' Request for Withdrawal and identified Defendants' failure to notify Mr. Chopra of the Request for Withdrawal as one of the USPTO's reasons for denying the Request. (See Exhibit G hereto). While the USPTO's denial does not indicate why the USPTO felt that Mr. Chopra was not notified, the only possible explanation was Defendants' failure to request that future correspondence be directed to Mr. Chopra's home address which as indicated above was the only designated address for the applicant in the '017 patent application.

18. In any event, after receiving the USPTO's decision denying the Request, rather than simply re-file the Request with Mr. Chopra's correct home address, Defendants did nothing. Defendants made no attempt to contact Mr. Chopra at home, at work or by telephone or email even though all of this contact information was clearly in Defendants' possession or easily obtainable as established by Mr. Chopra's Declaration and by Exhibit H hereto which is an email message dated July 11, 2000 from TTC attorney Hilyard to Mr. Chopra. This email message identifies Mr. Chopra's email address as DIL95@aol.com which as set forth in Mr. Chopra's Declaration has been his only personal email address since 1995.

19. On March 29, 2004, the USPTO issued its first Office Action in connection with

the '017 patent application. (See Exhibit I hereto) The Office Action was sent by the USPTO to TTC since Defendants were still Mr. Chopra's attorneys for the '017 patent application as Defendants' Request for Withdrawal had been denied.

20. On April 6, 2004, Gibby of TTC sent a letter and a copy of the Office Action to Mr. Chopra at NutraBuy's East Rice Road address. (See Exhibit J hereto) However, by 2004 NutraBuy as well as its successor entities were either out of business and/or dissolved. Accordingly, Mr. Chopra did not receive this letter or the Office Action. Defendants made no attempt to notify Mr. Chopra of the Office Action at his home address even though Defendants had Mr. Chopra's home address as previously discussed. Defendants also made no attempt to contact Mr. Chopra by email or by phone even though Defendants clearly possessed Chopra's email address as previously discussed.

21. The March 29, 2004 Office Action provided applicant Chopra with three (3) months in which to respond to the Office Action. Defendants were aware of this 3 month deadline as evidenced by the notation on the Office Action that a Response to the Office Action was due on June 29, 2004. (See Exhibit I)

22. Since Defendants were still Chopra's attorneys when they received the March 29, 2004 Office Action, Defendants had an obligation to either respond to the Office Action or file another Request to Withdraw from the case. They did not have the option of doing nothing but nothing is what they again did. The obligation to respond to the Office Action is implicit in 37 C.F.R. § 10.40(a) (see above). The obligation to respond is made explicit in 37 C.F.R. § 10.77(c) which provides that a practitioner shall not: (c) Neglect a legal matter entrusted to the practitioner.

23. As set forth in 35 U.S.C. § 133 and as stated in the March 29, 2004 Office Action when Defendants failed to respond to the Office Action by June 29, 2004, the '017 application became abandoned.

24. On November 8, 2004, having received no response to the Office Action, Dr. Geoffrey R. Akers, P.E., Primary Examiner, the USPTO examiner assigned to the examination of the '017 patent application, telephoned TTC to inquire as to whether Mr. Chopra really intended to abandon the case. According to an Interview Summary of the telephone call prepared by Dr. Akers (attached hereto as Exhibit K) a secretary of TTC's by the name of Laura confirmed on the telephone call that the case was to be abandoned. There was no attempt on Defendants' part at this point to contact Mr. Chopra to advise him of the abandonment or Dr. Akers' call regarding the same. Accordingly, both the abandonment of the '017 patent application and the confirmation thereof took place without ever contacting Chopra even though as indicated above Defendants possessed Mr. Chopra's home address, email address and possibly his phone number as well.

25. On information and belief, the previously filed '883 patent application was similarly abandoned by Defendants, i.e. without ever contacting Chopra and by failing to respond to an Office Action. In fact, TTC's internal form (Exhibit L hereto) entitled Abandonment of TTC Matter/Closure of File form which is used by TTC to close files, confirms that Defendants made no attempt to contact Chopra before closing the '883 patent application file. As set forth in Exhibit L, this form contains a checklist which sets forth a series of steps which are to be undertaken before a TTC file is closed and removed from the TTC docketing system. These steps are as follows:

☐     Check file for typographical error in address
☐     Review file and any other client matter files for change of address
☐     Check with billing/working attorney for any further information on client
☐     Check with Pacific Bell Directory Assistance/Telephone Directory
☐     If client if a corporation, check with Secretary of State Status Division for last known address
☐     The notification letters as returned from the U.S. Post Office showing our attempts to locate client must be attached to this form.

As indicated on the form, none of the above boxes were checked which indicates that none of these steps were undertaken by Defendants prior to closing the '883 file. The only box that was checked was the "Other" box which states that the file was closed because there has been no communication from this client since 2001. While there may not have been any communication from Chopra, the checklist on TTC's form establishes that TTC, according to its own internal procedures, must make a significant effort to try to locate the client before closing a file. The fact that none of the above boxes was checked proves that Defendants did nothing to try to locate Chopra and did not follow TTC's internal procedures prior to closing the file.

26.     TTC's electronic billing statements (see Exhibit M hereto) indicate that Defendants were notified of the abandonment and that the abandonment took place on December 9, 2003. As of the date this complaint was filed, Chopra possesses no further information regarding the '833 patent application because Defendants have refused to provide Chopra with TTC's file for prosecuting this application. As of this date, Chopra has also been unable to obtain any information from the USPTO regarding the '883 patent application.

27.     Chopra has been severely damaged by Defendants' intentional and unauthorized abandonments of his patent applications. If not intentional, Defendants' acts of abandonment or failures to act were done at the very least with reckless disregard of Mr. Chopra's rights in the inventions disclosed in the patent applications.

28. In June of 2007, Mr. Chopra discovered that a company by the name of Living Naturally, LLC ("LN") filed suit against a company by the name of Orderdog Inc. ("Orderdog") for patent infringement. (See Exhibit N) These companies were of interest to Mr. Chopra because they were both competitors of NutraBuy and/or its successor companies which employed Mr. Chopra until it was dissolved in 2003. An article discussing the industry and mentioning LN, Orderdog and NutraBuy (NutriNet at the time the article was written) is attached hereto as Exhibit O.

29. The fact that LN filed a patent infringement suit against Orderdog intrigued Mr. Chopra because he was not aware that LN possessed any patented technology. Indeed, in June of 2000, just after Mr. Chopra and others started NutraBuy, LN had approached Mr. Chopra about the possibility of licensing the technology embodied in the '883 patent application. The parties entered into a non-disclosure agreement (NDA) (see Exhibit P attached hereto) in July, 2000 and had periodic discussions until August 2002 but nothing ever materialized from the discussions. It turns out that at the same time Mr. Chopra was in discussions with LN, LN was also in discussions with a Mr. Carl Fowler who possessed technology that ultimately issued in August, 2006 as U.S. Patent No.7,113,922 and is the patent-in-suit in the above mentioned LN-Orderdog litigation.

30. The Fowler patent covers "online ordering" technology that is very similar to that claimed in the '883 and '017 patent applications and may in fact be Chopra and Sharma's technology since LN may have disclosed Chopra and Sharma's technology to Mr. Fowler in violation of the above NDA. Fowler's patent application was filed on November 2, 2000 over nine (9) months after the '883 patent application was filed and four (4) months after the parties

entered into discussions pursuant to the NDA. Thus, LN had plenty of time to provide Fowler with Chopra's and Sharma's technology.

31.     In any event, Fowler's technology, however obtained, is not "prior art" to Mr. Chopra's technology and therefore could not have been cited against the '883 patent application. As such, it could not have prevented the '883 patent application from issuing.

32.     The '017 patent application was filed after Fowler's patent application was filed but could have claimed the benefit of the '883 patent application had Defendants done so when they filed the '017 patent application. Defendants' failure to claim the benefit of the '883 patent application when they filed the '017 patent constitutes another act of malpractice on their part to the detriment of Chopra.

33.     In any event, the '883 and '017 patent applications as well as a patent covering the technology disclosed in the above mentioned unfiled CIP patent application would have issued if Defendants had not intentionally and without authorization abandoned the '883 and '017 patent applications. The patents issuing from these applications would have covered both LN's and Orderdog's technology and both LN and Orderdog would have had to have obtained a licence to use the technology covered by these patents or faced a patent infringement suit similar to that now filed by LN against Orderdog.

34.     As indicated in Exhibit N which is a page from LN's website, LN generates over a half a billion dollars per year in electronic ordering transactions. At a royalty rate of 5% of gross profits, this would translate into royalties payable to Chopra in excess of $550,000 per year. Since Chopra's claims would be against both LN and Orderdog, it is reasonable to assume that Chopra's damages per year are double that of LN's royalties or in excess of $1.1 million per

year for the life of the patents.

35. All conditions precedent to the bringing of this action have been performed or have occurred.

### FIRST CLAIM FOR RELIEF
### Negligence - All Defendants

36. Chopra incorporates the allegations of paragraphs 1 through 35 by reference, the same as if fully set forth herein.

37. The preparation, filing and prosecution of the '883 and '017 applications with the USPTO fell within the scope of Defendants' employment.

38. When prosecuting the '883 and '017 applications, Defendants were obligated to Chopra to make reasonable efforts to contact Chopra and advise Chopra as to the progress of the applications.

39. Defendants failed to make reasonable efforts to contact Chopra and advise Chopra as to the progress of the applications.

40. The failure to make reasonable efforts to contact Chopra and advise Chopra as to the progress of the applications resulted in the abandonment of the applications which caused Chopra to suffer damages.

### SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty - All Defendants

41. Chopra incorporates the allegations of paragraphs 1 through 40 by reference, the same as if fully set forth herein.

42. Chopra, relying upon Defendants' expertise in the patent field, placed his trust and confidence in Defendants to properly prosecute the applications to protect his inventions to

the fullest extent possible.

43. Defendants had an obligation to Chopra to exercise reasonable care and skill when prosecuting the applications in prosecuting the applications.

44. In addition, 37 C.F.R. § 10.77(c) specifically provides that a practitioner shall not neglect a legal matter entrusted to the practitioner.

45. By failing to respond to Office Actions from the USPTO on the applications, Defendants failed to exercise reasonable care and skill when prosecuting the applications and specifically violated 37 C.F.R. § 10.77(c).

46. Defendants conduct constitutes a breach of their fiduciary duty owed to Chopra in that the failure to respond to Office Actions resulted in the abandonment of the applications which caused Chopra to suffer damages.

47. Defendants aforesaid acts and/or failures to act were done willfully and wantonly and with reckless disregard for Chopra's rights which entitles Chopra to punitive damages and/or exemplary damages pursuant to C.R.S. § 13-21-102.

WHEREFORE Chopra prays for judgment against Defendants as follows:

a. That jurisdiction is present and venue is proper;

b. For an accounting to determine the damages adequate to compensate Chopra for the Defendants' failure to obtain the patents and that judgment in favor of Chopra be thereupon entered against DEFENDANTS, together with prejudgment interest;

c. For pecuniary damages, including, but not limited to, consequential damages;

d. For expert witness fees and costs;

e. For interest, including, but not limited to, statutory interest;

f. For punitive and/or exemplary damages, caused by Defendants willful, wanton and reckless disregard for Chopra's rights and to protect the public by preventing Defendants from continuing to engage in business in such an egregious manner; and,

g. For such other and further relief as the Court may deem just and proper.

**A JURY TRIAL IS REQUESTED.**

DATED this 21st day of November, 2007.

By: s/ C. Michael Montgomery
C. Michael Montgomery, Esq.
Montgomery, Kolodny, Amatuzio & Dusbabek, LLP
1775 Sherman Street, 21st Floor
Denver, CO 80203
(303) 592-6600


s/ Brian D. Smith
Brian D. Smith, Esq.
BRIAN D. SMITH, P.C.
1125 Seventeenth Street, Suite 600
Denver, Colorado 80202
(303) 523-0900

ATTORNEYS FOR DILIP CHOPRA

STATE OF COLORADO    )
                     ) ss.
COUNTY OF DENVER     )

      Dilip Chopra, the Plaintiff herein, being duly sworn, deposes and says that he has read the foregoing VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL, and knows the contents thereof, and the same is true of his own knowledge except as to those matters which he has been informed, and as to those matters he does believe them to be true.

                                                           _____
                                                           Dilip Chopra

      Subscribed and sworn to before me this ____ day of November, 2007.


                                                           Notary Public

My commission expires:

(SEAL)