# EXHIBIT K



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/801,017 | 03/06/2001 | Dilip Chopra | 19374-000300US | 4065 |

| 20350 | 7590 | 11/16/2004 |
|---|---|---|

TOWNSEND AND TOWNSEND AND CREW, LLP
TWO EMBARCADERO CENTER
EIGHTH FLOOR
SAN FRANCISCO, CA 94111-3834

| EXAMINER |
|---|
| AKERS, GEOFFREY R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3625 | |

DATE MAILED: 11/16/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 09/801017 | 3/6/01 | Chopra | |

| EXAMINER |
|---|
| Abony |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2625 | 6 |

DATE MAILED:

# NOTICE OF ABANDONMENT

This application is abandoned in view of:

☑ Applicant's failure to timely file a proper reply to the Office letter mailed on _____

☐ A reply (with Certificate of Mailing or Transmission of _____ ) was received on _____ which is after the expiration of the period for reply (including a total extension of time of _____ month(s)) which expired on _____

☐ A proposed reply was received on _____ , but it does not constitute a proper reply under 37 CFR 1.113 to the final rejection.
(A proper reply under 37 CFR 1.113 to a final rejection consists only of: (1) a timely filed amendment which places the application in condition for allowance; (2) a timely filed Notice of Appeal (with appeal fee); or (3) a timely filed Request for Continued Examination (RCE) in compliance with 37 CFR 1.114).

☐ A reply was received on _____ , but it does not constitute a proper reply, or a *bona fide* attempt at a proper reply, to the non-final rejection. See 37 CFR 1.85(a) and 1.111. (See explanation in the last box below).

☑ No reply has been received.

☐ Applicant's failure to timely pay the required issue fee and publication fee, if applicable, within the statutory period of three months from the mailing date of the Notice of Allowance (PTOL-85).

☐ The issue fee and publication fee, if applicable, was received on _____ (with a Certificate of Mailing or Transmission dated _____ ), which is after the expiration of the statutory period for payment of the issue fee (and publication fee) set in the Notice of Allowance (PTOL-85)(or Notice of Publication Fee Due).

☐ The submitted fee of $_____ is insufficient. A balance of $_____ is due.
The issue fee by 37 CFR 1.18 is $_____ . The publication fee, if required, by 37 CFR 1.18(d) is $_____ .

☐ The issue fee and publication fee, if applicable, have not been received.

☐ Applicant's failure to timely file corrrected drawings as required by, and within the three-month period set in, the Notice of Allowability (PTOL-37).

☐ Proposed corrected drawings were received on _____ (with a Certificate of Mailing or Transmission dated _____ ), which is after the expiration of the period for reply.

☐ No corrected drawings have been received.

☐ The letter of express abandonment which is signed by the attorney or agent of record, the assignee of the entire interest, or all the applicants.

☐ The letter of express abandonment which is signed by an attorney or agent (acting in a representative capacity under 37 CFR 1.34(a)) upon filing of a continuing application.

☐ The decision by the Board of Patent Appeals and Interferences rendered on _____ and because the period for seeking court review of the decision has expired and there are no allowed claims.

☑ The reason(s) below: _ABANDONMENT_ _____

Petitions to revive under 37 CFR 1.137(a) or (b), or requests to withdraw the holding of abandonment under 37 CFR 1.181, should be promptly filed to minimize any negative effects on patent term.

11/8/04

PTO-1432 (07/01)

|  | Application No. | Applicant(s) |
|---|---|---|
| **Interview Summary** | 09/801,017 | CHOPRA, DILIP |
|  | Examiner | Art Unit |
|  | Geoffrey Akers | 3625 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Geoffrey Akers*.          (3) _____.

(2) *Laura(secretary)*.        (4) _____.

Date of Interview: *08 November 2004*.

Type: a)☒ Telephonic   b)☐ Video Conference
      c)☐ Personal [copy given to: 1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
   If Yes, brief description: _____.

Claim(s) discussed: _____.

Identification of prior art discussed: _____.

Agreement with respect to the claims f)☒ was reached.  g)☐ was not reached.  h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Confirmation of abandonment of the case*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

11/8/04

DR. GEOFFREY R. AKERS, P.E.
PRIMARY EXAMINER

Examiner Note: You must sign this form unless it is an
Attachment to a signed Office action.

Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)          Interview Summary          Paper No. 20041109

Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

---

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

# EXHIBIT L

# ABANDONMENT OF TTC MATTER/CLOSURE OF FILE

To: RECORDS DEPARTMENT (with Folder(s))

Date: <u>December 9, 2003</u>

File No. <u>019374-000100US</u>     Appln./Pat./TM Reg. No. <u>09/490,883</u>

Client: <u>NutraBuy, LLC</u>

The above identified file has been abandoned and/or removed from TTC docketing system for the following reason:

☐ Failure to Respond to USPTO - No instructions from client (reminder attached)

☐ Request of Client/Abandonment (notification should be attached)

■ File Transferred to Another Firm/Attorney
  [STOP] Please use the new Client/Matter Transfer Out form (doc. #SF 1236721)

☐ Non-payment of annuity/ies

☐ Unable to locate client for authorization to pay
  ☐ a.  maintenance fee
  ☐ b.  annuity payment
  ☐ c.  Sec. 8 or 15 use declarations
  ☐ d.  renewal
  ☐ e.  other _____

  In an effort to locate client, we have undertaken the following steps:
  ☐ Check file for typographical error in address
  ☐ Review file and any other client matter files for change of address
  ☐ Check with billing/working attorney for any further information on client
  ☐ Check with Pacific Bell Directory Assistance/Telephone Directory
  ☐ If client is a corporation, check with Secretary of State Status Division for last known address

☐ The notification letters as returned from the U.S. Post Office showing our attempts to locate client must be attached to this form.

☒ Other: <u>There has been no communication from this client since 2001.</u>

<u>Nina L. McNeill</u>
Print name of TTC employee completing form and sign

Approved: _____
         Billing/Managing Partner

NOTE: All Docketing Departments will be notified by the Records Dept. via email.

SF 1152142 60098565 v1
rev 2/03

Document Name: Abandonment of TTC Matter/Closure of File
Document #: 590

# EXHIBIT M

# TOWNSEND AND TOWNSEND AND CREW LLP

NutraBuy, LLC  
Attn: Dilip Chopra  
13750 E. Rice Rd.  
Aurora, CO 80015

Invoice Number   258451  
Invoice Date     08/25/00  
Client Number    019374-DJG  
Matter Number    000110US  
Page    1

Re: 000110US: U.S. Patent Utility Electrical  
    CIP System and Method for Single-Source, Lowest  
    Price Product Procurement (ABANDONED 12/09/03)

FOR PROFESSIONAL SERVICES RENDERED:

| Date | Aty | | Hours | Value |
|---|---|---|---|---|
| 07/11/00 | CSH | Continue preparing CIP patent application | 3.80 | 1,083.00 |
| 07/12/00 | CSH | Continue preparing CIP patent application | 1.90 | 541.50 |
| 07/13/00 | CSH | Continue preparing CIP application | 1.70 | 484.50 |
| 07/14/00 | CSH | Continue preparing the patent application | 1.20 | 342.00 |
| 07/19/00 | CSH | Continue revising patent application; Prepare new claims for the case | 3.60 | 1,026.00 |
| 07/20/00 | CSH | Continue preparing patent application | 1.30 | 370.50 |
| 07/24/00 | CSH | Prepare for meeting with the inventors; Meet with the inventors discussing the case; Review GreenAcre.com/Living Naturally valuation information | 1.50 | 427.50 |
| 07/25/00 | CSH | Continue preparing patent application | 0.80 | 228.00 |
| 07/26/00 | CSH | Continue preparing patent application | 0.90 | 256.50 |

```
                    TOTAL HOURS     16.70

        CURRENT FEES                          4,759.50

        TOTAL THIS MATTER                    $4,759.50
```

TWO EMBARCADERO CENTER • 8TH FLOOR  
SAN FRANCISCO, CA 94111-3834 • (415) 576-0200

# EXHIBIT N








Friday, May 25, 2007
**Living Naturally Files Patent Infringement Suit against Orderdog**

- PRESS RELEASE
- INDUSTRY NEWS

**May 25, 2007, Venice, Fla.** – Today Living Naturally, LLC, filed a federal law suit against Orderdog Inc. for patent infringement. The suit included an immediate cease and desist notice against Orderdog for using electronic ordering processes that are in direct infringement of this patent. This Living Naturally patent was originally filed in November of 2001.

Living Naturally's electronic ordering patent relates to two of the company's products – Scan Genius, a retail procurement and inventory management system, and Sales Genius, an in-field sales automation and electronic ordering system. Scan Genius and Sales Genius are now broadly used by retailers and suppliers in the industry, generating over half a billion dollars in electronic order transactions per year.

Upon award of this patent by the United States Patent Office in 2006, Living Naturally Chairman CJ Lett III stated that the company fully intended to protect its rights under this patent. The suit against Orderdog is the first legal action by the company in this regard.

Additional information on this patent and are a matter of public record (Patent No: US 7,113,922).

**About Living Naturally**
Living Naturally is a leading provider of online programs to the North American natural health industry. Formed in 1999 to service the needs of retailers and suppliers in this space, the company has established itself at the forefront of innovative solutions for the industry. Visit www.livingnaturally.com for more information

Print Screen   Email a Friend




Home   About Us   Retail Solutions   Supplier Solutions   Testimonials   News Room   Our Partners   Contact Us
Copyright © 2007 Living Naturally, LLC   All rights reserved.

# EXHIBIT O

Competition Heats up for Hand-Held Order Scanners



Home | Archive | Directory | Subscribe | Advertise | Forums | eNews | Events | Webcasts | Careers

Article

**Competition Heats up for Hand-Held Order Scanners**
*Randy Barrett*

10/1/2002 9:21:57 PM

A cadre of young companies wants to entice technology-averse natural foods retailers with new, easy-to-use order-processing systems designed specifically for them.



Nettie Clark runs a vitamin shop all by herself. Until recently, she spent 15 hours a week ordering; now with some new gee-whiz technology, it takes mere minutes. "I felt like my brain was fried," says the proprietor of Vitamin Plus in Castle Rock, Colo. "I did everything by hand."

Clark isn't alone. Most natural foods retailers are technology averse, vendors and industry executives say. They use old-fashioned registers and wander the aisles of their stores with paper order forms dropping at their feet. A cadre of young companies wants to change all that with new, easy-to-use order-processing systems designed specifically for natural foods retailers.

About 18 months ago, Clark was approached by Aurora, Colo.-based NutriNet Systems, which offers a package called NutraBUY. It consists of a hand-held scanner and a PC.

Here's how it works: The retailer walks through the store and scans in the bar codes of any products needing to be reordered. The palm-top device logs the orders for later download to the PC. There, the retailer can finalize the order on-screen and then send it to NutraBUY via modem.

On the back end, NutriNet sorts the order by distributor or manufacturer and forwards the orders electronically. NutriNet also offers a completely Web-based system for retailers who have high-speed Internet connections.

"It saves my brain and makes it possible to run the store by myself," Clark says.

NutriNet Chief Executive Officer Dilip Chopra says his company offers a large database of products—some 30,000 SKUs and 540 manufacturers are represented in his computerized catalog. About 50 retailers are currently using the system, which was introduced in 2000.

"The deployment is not as fast as we would like it to be," Chopra says, citing marketing problems. But the issue is probably simpler: NutraBUY has stiff competition, and its cost, $199 per month, is nearly double that of competitors.

OrderDog Inc., of Lewisville, Texas, jumped into the market last year and has already signed up 200 stores for its order-management system. For $99 per month, OrderDog provides a free computer and one year of Internet service. The system hooks into existing hand scanners, such as those made by Telxon Corp., which was acquired by Symbol Technologies in 2000.

"We get the least resistance from retailers by using technology they're already familiar with," says OrderDog CEO Richard MacKillop. "We've tried to create an advanced level of technology with a simple interface."

Once OrderDog receives an order from the retailer, either via modem or the Web, it automatically checks for manufacturer specials and can save retailers up to 11 percent through promotions they

weren't aware of, MacKillop says. Like NutraBUY, the OrderDog system enables retailers to finalize their order via a Web page before sending it on to distributors.

Joe Withey, owner of Withey's Health Foods in Kalispell, Mont., was a little apprehensive about OrderDog when he first tried it, because he's not the technical kind. The nerves were short-lived. "It's a piece of cake. The beauty of it is that I don't need to carry around order guides, and I'm saving eight hours a week, if not more," Withey says.

OrderDog makes the majority of its money from distributors and manufacturers. The company charges vendors a transaction fee of 2 percent per order. That's a good deal, says MacKillop, because OrderDog requests are accurate and sent electronically, minimizing returns and sales rep time. In July, the company inked an exclusive licensing deal with distributor Tree of Life Inc.

Living Naturally of Venice, Fla., also has jumped into the fray with its own ordering system called Scan Genius. Its twist on the theme is a hand-held scanner that recalls past orders and even makes suggestions based on usage algorithms. It also has a bar code label maker attached. The cost: $50 per month.

Living Naturally CEO Glenn Field says the brainier scanner will be the key to his company's success. "The problem with the [Telxon scanners] is that they are completely blind and the scanner is slow."

The company currently has 200 retailers on board and distributor relationships with United Natural Foods Inc.; Brea, Calif., wholesaler Nature's Best; and Nutri-Books, among others.

Last but not late to the party is 2BNatural Corp. of Redmond, Wash., which offers an order management package for free—including the scanner and a PC with a flat panel display. The company makes its profit from manufacturers and distributors. "We aggregate the buying power of all our customers," says 2BNatural President Dean South.

NutriNet's Chopra says the deals his competitors are striking with vendors are bad for retailers because distributors have an incentive to limit product choices to their own brands. "We're not in bed with anyone. We want to show every product out there to the retailers," he says.

MacKillop takes umbrage at the assertion, but admits some distributors like to play hardball. OrderDog recently backed off from a deal with UNFI because the company wanted too much control over information, he says.

*Randy Barrett is president of The Business Writers Group (www.bizwritersgroup.com) and is a soulful bluegrass singer from Falls Church, Va.*

Natural Foods Merchandiser volume XXIII/number 10/p. 34

### POS and Order Management Meet in Middle

Fancy point-of-sale systems are rotten at ordering. Ordering systems are weak at inventory management. What's a merchant to do?

Nothing. Just wait a few months and the problem will be largely taken care of, say industry insiders. Both POS and order management vendors are working to integrate their hardware and software. ECR Software Corp. is collaborating with OrderDog Inc. Living Naturally is integrating with three companies, CAM Commerce Solutions Inc., Argus Systems Group Inc. and Dun & Dun. 2BNatural Corp. is also working on POS compatibility.

The real problem is getting natural foods retailers to buy a POS system—which typically combines cash register, credit card processing and inventory management functions—in the first place. Their resistance is an ongoing challenge for Mark Kolenic, a regional sales representative for CAM.

"A lot of [natural foods retailers] are hobbyists, and they're not so focused on profits," Kolenic says. "Sometimes you find people from an age group that doesn't like computers."

Or they're from that select club that doesn't like to spend boatloads of money. POS systems can run between $6,000 and $125,000 per store.

Joe Withey, owner of Withey's Health Foods in Kalispell, Mont., runs a tape on his register and does all his bookkeeping and inventory tracking the old-fashioned way. He loves his OrderDog system, but he has no interest in a POS installation: "It's very cumbersome."

The primary problem is maintenance of the enormous product database at the heart of any POS platform. To work correctly, the system must have up-to-date costing information for every product in the store. That can mean tracking and updating thousands of SKUs.

"The No. 1 thing a store [with a POS system] is looking for is someone to do the database for them," says Dean South, president of 2BNatural.

Order management systems are strong on placement of purchase orders, but they don't generally track how much is being sold out of inventory. A POS unit does this automatically at the register and offers limited order creation. It's then up to the retailer to place an order—often by fax—once the system sends up a flag that a minimum shelf count has been reached.

Everyone recognizes the two technologies need to meet in the middle.

"We have an ordering system but [order management vendors] can do things we can't do," says Otis Flieth, vice president of sales for ECR Software Corp. ECR just put in its first installation with an interface to NutraBUY's ordering system, at no extra charge.

*Natural Foods Merchandiser* volume XXIII/number 10/p. 34, 38

Print Article
Reprint/License this Article
View Entire Issue
Search for Similar Articles

---

**NATURAL PRODUCTS MARKETPLACE**

A publication of
New Hope
Natural Media

**Try the original Dr. Wendy's Wrinkle Warrior**
A moisturizing pH-balanced aloe vera skin cream with herb extracts. Reverse time. Reduce blemishes.

**New Products Launch Pad**
Thousands of new product profiles at your fingertips

**View NFM's Webcasts**
Get educated on niche markets online from anywhere, anytime!

**Advertise online with naturalfoodsmerchandiser.com**
Let your brand make over 70,000 impressions per month with NFM online surfers

*Buy your classified ad now*

Home | Customer Service | Privacy Policy | Site Use Agreement | Site Map |



*A Division of* Penton

Copyrights©2007. Penton Media. Inc

 

 



Friday, May 25, 2007
**Living Naturally Files Patent Infringement Suit against Orderdog**

▸ PRESS RELEASE

▸ INDUSTRY NEWS

**May 25, 2007, Venice, Fla.** – Today Living Naturally, LLC, filed a federal law suit against Orderdog Inc for patent infringement. The suit included an immediate cease and desist notice against Orderdog for using electronic ordering processes that are in direct infringement of this patent. This Living Naturally patent was originally filed in November of 2001.

Living Naturally's electronic ordering patent relates to two of the company's products – Scan Genius, a retail procurement and inventory management system, and Sales Genius, an in-field sales automation and electronic ordering system. Scan Genius and Sales Genius are now broadly used by retailers and suppliers in the industry, generating over half a billion dollars in electronic order transactions per year.

Upon award of this patent by the United States Patent Office in 2006, Living Naturally Chairman CJ Lett III stated that the company fully intended to protect its rights under this patent. The suit against Orderdog is the first legal action by the company in this regard.

Additional information on this patent and are a matter of public record (Patent No: US 7,113,922).

**About Living Naturally**
Living Naturally is a leading provider of online programs to the North American natural health industry. Formed in 1999 to service the needs of retailers and suppliers in this space, the company has established itself at the forefront of innovative solutions for the industry. Visit www.LivingNaturally.com for more information.

Print Screen    Email a Friend



Home    About Us    Retail Solutions    Supplier Solutions    Testimonials    News Room    Our Partners    Contact Us
Copyright © 2007 Living Naturally, LLC – All rights reserved

# EXHIBIT
# P

# *NutraBuy*™

## Non-Disclosure Agreement

The undersigned acknowledges that NutraBuy, Inc. has furnished to the undersigned potential Investor ("Investor") certain proprietary data ("Confidential Information") relating to the business affairs and operations of NutraBuy, Inc. for study and evaluation by Investor for possible investment purposes.

Investor acknowledges that the information provided by NutraBuy Inc. is confidential; therefore, Investor agrees not to disclose it and not to disclose that any discussions or contracts with NutraBuy Inc. have occurred or are intended, other than as provided for in the following paragraph.

It is acknowledged by Investor that information to be furnished is in all respects confidential in nature, other than information which is in the public domain through other means and that any disclosure or use of same by Investor, except as provided in this agreement, may cause serious harm or damage to NutraBuy Inc., and its owners and officers. Therefore, Investor agrees that Investor will not use the information furnished for any purpose other than as stated above, and agrees that Investor will not either directly or indirectly by agent, employee, or representative, disclose this information, either in whole or in part, to any third party; provided, however that (a) information furnished may be disclosed only to those directors, officers and employees of Investor and to Investor's advisors or their representatives who need such information for the purpose of evaluating any possible transaction (it being understood that those directors, officers, employees, advisors and representatives shall be informed by Investor of the confidential nature of such information and shall be directed by Investor to treat such information confidentially), and (b) any disclosure of information may be made to which NutraBuy Inc. consents in writing. At the company's request, Investor will return to NutraBuy Inc. all records, reports, documents, and memoranda furnished and will not make or retain any copy thereof.

_____, CEO      _7-11-00_
Signature                    Date

_Bub Hoffmann_
Name (typed or printed)