IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02447-MSK-MEH

DILIP CHOPRA, an individual,

      Plaintiff,

v.

TOWNSEND, TOWNSEND AND CREW LLP, a California limited partnership;
DARIN GIBBY, an individual and
CHAD HILYARD, an individual;

      Defendants.

## MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA

COMES NOW Plaintiff, Dilip Chopra ("Chopra" hereinafter) by and through his attorneys, C. Michael Montgomery and Ryan C. Gill of Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P. and Brian D. Smith of Brian D. Smith P.C., and respectfully submits this motion for protective order and to quash subpoena, as follows:

### CERTIFICATION

Pursuant to D.COLO.L.Civ.R. 7.1A, undersigned conferred with opposing counsel and opposing counsel objects to the relief requested herein.

### BACKGROUND

Defendants served a subpoena *duces tecum* and notice of oral deposition on Plaintiff's attorney Brian Smith, Esq. on August 13, 2008. The subpoena and notice of deposition are attached hereto as Exhibits A and B, respectively. The subpoena seeks the following:

1

1. Any and all documents regardless of format or version pertaining to your representation of, or communications with, Mr. Dilip Chopra prior to October 17, 2007, including without limitation all correspondence, notes, memoranda, legal research, factual research, files, fee agreements, billing statements, time sheets, work papers, telephone messages, e-mail messages, and draft or final pleadings.

*See* Ex. A.  Plaintiff objects to this subpoena on grounds that it violates attorney-client privilege and/or work product and is irrelevant.

## ARGUMENT

**I.    LAW GOVERNING PROTECTIVE ORDERS.**

Fed. R. Civ. P. 26(c) governs the application and entry of Protective Orders, which are prevent a party from being unduly annoyed or harassed at a deposition.  Rule 26 states, in relevant part, as follows:

> (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> >    (1) that the disclosure or discovery not be had;
> >              *          *          *
> >    (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
>
> If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Fed. R. Civ. P. 26(b)(2)(C) also states the Court can limit the use of discovery otherwise permitted under the Federal Rules of Civil Procedure if the discovery sought is unreasonably cumulative or duplicative. Rule 26(c) requires that "good cause" be shown for a protective order to be issued and the burden is upon the movant to show the necessity of its issuance. *Jackson v. U.S.*, 153 F.R.D. 646, 648 (D.Colo. 1993) (citations omitted). Good cause exists for entry of a Protective Order in these circumstances.

**II.     THE DEPOSITION OF BRIAN SMITH AND SUBPOENA *DUCES TECUM* ARE INAPPROPRIATE.**

Depositions of opposing counsel are generally not favored. The Tenth Circuit has addressed the issue of depositions of opposing counsel as follows:

> Depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Boughton v. Cotter Corp.,* 65 F.3d 823, 829 (10th Cir. 1995) *quoting Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). "Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Shelton,* 805 F.2d at 1327*; see also, Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1112 (10th Cir. 2001). Furthermore, *Shelton* recognizes that deposing counsel has the effect of disclosing attorney work product because counsel is likely to recollect only those documents that he or she believes are important. *Shelton,* 805 F.2d at 1328.

Defendants cannot show any of the *Shelton* criteria. For example, Defendants have not noticed the deposition of Mr. Chopra. Moreover, as of the date that the notice of deposition and subpoena were served, Defendants had not served any written discovery. Under these circumstances, Defendants cannot be certain that the information sought from Mr. Smith is not available by other means. Magistrate Judge Kathleen M. Tafoya reached a similar conclusion and entered a protective order in *Rybarczyk v. Craig Hosp.*, wherein a party sought to depose opposing counsel before fully exploring those matters through discovery. *Rybarczyk v. Craig Hosp.*, 2008 WL 877204, *3 (D.Colo. March 26, 2008). In addition, the information sought is clearly irrelevant and privileged, as will be discussed in more detail below.

Defendants seek to circumvent the written discovery process. Rather than serve a subpoena on Mr. Smith, Defendants should have simply served a request for production of documents on Mr. Chopra. With the exception of work-product, those documents in an attorney's possession are considered to also be in the possession of the client. Therefore, documents held by Mr. Smith will be considered in any response to written discovery directed to Mr. Chopra. Documents that are privileged would be so marked on a privilege log. Instead, Defendants submit an overly broad subpoena *duces tecum* to Mr. Smith. If this procedure were permissible, every litigated case would begin with a subpoena to plaintiff's counsel rather than formal written discovery.

### III. THE INFORMATION SOUGHT IS NOT RELEVANT TO THE ISSUES TO BE DETERMINED IN THIS PHASE OF THE BIFURCATED PROCEEDINGS.

Defendants maintain that the date of closure of the bankruptcy is the relevant date for purposes of determining the judicial estoppel questions at issue. *See* Ex. A, (subpoena requesting documents through October 17, 2007). It is not. Rather, the relevant date is the date that Mr. Chopra filed his bankruptcy, March 14, 2007.

Judge Krieger has clearly stated that the question to be resolved at the evidentiary hearing is whether Mr. Chopra's malpractice action accrued prior to his filing a bankruptcy petition, and if so, whether he knowingly failed to disclose said cause of action. *See Docket No. 54*, Transcript of June 18, 2008 Hearing at page 19, lines 8-13. Specifically, Judge Krieger stated the following:

> Under Section 541 of the Bankruptcy Code -- that's 11 U.S.C. Section 541(a)(1) -- *the commencement of a bankruptcy case creates an estate* which is comprised of all property wherever located and by whomever held, except certain which are not applicable here. Whether a legal interest -- this includes all legal and equitable interests of the debtor in property *as of the commencement of the case*. Whether something is a legal or equitable interest is determined by state law. *A legal interest includes a cause of action belonging to the debtor at the commencement of the bankruptcy case*, and it is state law that determines whether a cause of action exists and belongs to the debtor and therefore becomes property of the estate.
>
> And the two cases that track this line of reasoning are *Sender vs. Simon*, 84 F.3d 1299, a Tenth Circuit, 1996 case, and *Barnhill vs. Johnson*, 503 U.S. 393, a 1992 United States Supreme Court case.
>
> Here the cause of action for legal malpractice would arise under Colorado law, and *this court would be determining when the claim of legal malpractice arose under Colorado law, whether that was prior to the bankruptcy filing*.
>
> * * *
>
> So my thinking here would be that we would have two issues that we need to deal with, and that is *whether the malpractice claim constituted property at the time the bankruptcy case was filed* and secondly whether or not Mr. Chopra

5

      knowingly failed to disclose it or failed to disclose it as a result of inadvertence or mistake.

*See Id.* at page 18, lines 1-21 and page 19, lines 8-13 (emphasis added). In the above quoted passage, Judge Krieger reiterated in no uncertain terms that the key point in time for determination of the judicial estoppel issue is the *commencement* of the bankruptcy action by filing a petition for bankruptcy.

      Judge Krieger's analysis is supported by the law. Pursuant to the United States Bankruptcy Code, the trustee gains control of "all legal or equitable interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a)(1) (emphasis added). "It is true that, generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001), *citing Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp. 1424, 1433 (M.D.Ala.1996); *Erickson v. Baxter Healthcare*, 94 F.Supp.2d 907, 912-13 (N.D.Ill.2000). In this regard, there is an important distinction between bankruptcy pursuant to Chapter 7 versus Chapters 11 or 13, as described by the court in *Brassfield v. Jack McLendon Furniture, Inc.*, as follows:

> Despite the fact that § 541(a)(7) appears to mandate the inclusion of post-commencement property in the bankruptcy estate, a distinction is drawn between petitions filed under Chapter 7 and those filed under Chapters 11 and 13. In an individual case filed under Chapter 7, two estates are created-the chapter 7 bankruptcy estate, and a new, post-petition estate. Into this post-petition estate goes "property which the debtor receives, after filing and which is not governed by the exceptions in § 541(a)(5)." [Citation]. Thus, unlike a case filed under Chapter 11 or 13, ***the Chapter 7 debtor retains possession of property acquired after the commencement of the bankruptcy case***. [Citation].

*Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp. 1424, 1432 (M.D. Ala. 1996) (emphasis added), *citing In Re Griseuk*, 165 B.R. 956, 958 n. 3 (Bankr. M.D. Fla. 1994) and *In*

6

*Re Ellis*, 108 B.R. 262, 268 (D.Hawaii 1989). There is nothing in the Bankruptcy Code that "requires a Chapter 7 debtor to disclose post-petition assets not within § 541(a) obtained after the commencement of a case but before the entry of an order of discharge." *In re Wakefield*, 312 B.R. 333, 338 (Bkrtcy. N.D. Tex. 2004). There is simply no continuing duty in a Chapter 7 bankruptcy to schedule assets acquired after a bankruptcy petition is filed. *Id.*

Given the above, a debtor's failure to list an asset cannot form the basis for judicial estoppel unless that asset accrued prior to the filing of a bankruptcy petition. The Court in *Harms v. Cigna Ins. Companies* stated this principal as follows:

> In a Chapter 7 bankruptcy proceeding, only causes of action that have accrued before filing of the bankruptcy petition are assets of the bankruptcy estate. [Citation]. Any cause of action that accrues after the filing of the bankruptcy petition is property of the debtor. [Citation]. Accordingly, ***the debtor is not required to disclose causes of action that accrue after filing of the petition, and failure to disclose does not estop the debtor from prosecuting the claim*** at a later date.

*Harms v. Cigna Ins. Companies*, 421 F.Supp.2d 1225, 1228-29 (D.S.D. 2006) (emphasis added). Similarly, the *Brassfield* court found that judicial estoppel did not apply to causes of action arising after the filing of debtor's bankruptcy petition as follows:

> [J]udicial estoppel does not bar [debtor's] claims because she had no duty to disclose them. The Court finds that [debtor's] claims did not accrue prior… the date she petitioned for bankruptcy. ***Because [debtor's] claims accrued after the commencement of her Chapter 7 bankruptcy case, they do not become part of the bankruptcy estate***."

*Brassfield*, 953 F.Supp. at 1433 (emphasis added).

Mr. Chopra filed his bankruptcy petition on March 14, 2007. *See* Ex. C, Selected pages of Bankruptcy Petition. Nonetheless, Defendants in this case seek documents and information

7

from Mr. Smith up to and including October 17, 2007, which is the date that Mr. Chopra's bankruptcy was closed.  *See* Ex. D, Order Accepting Trustee's Report and Closing Case.

The discovery sought by Defendants from Mr. Smith is pointless.  Mr. Chopra did not contact Mr. Smith until August 27, 2007, over five months after he filed his bankruptcy petition. *See* Docket No. 24, Affidavit of Dilip Chopra at ¶ 14.  There is no conceivable relevance to Mr. Chopra's communications with Mr. Smith several months after he filed the petition for bankruptcy.  The fact that the discovery sought also intrudes on the attorney-client relationship also cuts in favor of precluding the discovery sought by Defendants.

Indeed, the overbreadth of Defendants' subpoena is staggering considering the relatively straight forward issue to be decided by the court in this bifurcated proceeding.  None of Mr. Smith's files are relevant to the issue of whether Mr. Chopra's cause of action accrued prior to the filing of Mr. Chopra's bankruptcy, some five months prior to Mr. Smith's retention.  Nor are these files relevant to whether Mr. Chopra knew of this cause of action at the time that he filed bankruptcy.  Furthermore, the specific categories of documents do not appear to be drawn with any kind of specificity toward a goal of discovering admissible evidence to the narrow topics at issue.  In fact, the specific requests go so far afield as to request items such as Mr. Smith's fee agreements, billing statements, and time sheets.  Perhaps even further afield is the request for "draft" pleadings. Defendants clearly did not put any effort or thought into tailoring their subpoena to the topics at hand.

### IV. THE INFORMATION SOUGHT IS PRIVILEGED UNDER THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINES.

#### A. Attorney-Client Privilege

The Attorney-Client privilege is codified in Colorado as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment…

C.R.S. § 13-90-107(1)(b). "The privilege protects communications between attorney and client relating to legal advice." *Alliance Const. Solutions, Inc. v. Department of Corrections*, 54 P.3d 861, 864 (Colo. 2002), *citing Wesp v. Everson,* 33 P.3d 191, 196 (Colo.2001); *see also In re Grand Jury Subpoena,* 697 F.2d 277, 278 (10th Cir. 1983) ("A document is protected by the attorney client privilege if it reveals a communication between a client and an attorney, made in order to obtain or deliver legal assistance, that was intended to be treated as confidential."); *People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) (""The attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations."). "The privilege protects not only information and advice communicated from the attorney to the client, but also communications to the attorney to enable him to give sound and informed legal advice." *Alliance Const. Solutions,* 54 P.3d at 865. "The overall social benefits of the privilege outweigh any harm that may result in a particular case from the privilege's application." *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001). "The right of parties within our justice system to consult professional legal experts is rendered meaningless unless communications between attorney and client are

ordinarily protected from later disclosure without client consent." *Alliance Const. Solutions,* 54 P.3d at 865.  *Id.*

Defendants' subpoena seeks privileged communications on its face.  The subpoena begins with the following demand for documents: "Any and all documents… pertaining to your representation of, ***or communications with, Mr. Dilip Chopra*** prior to October 17, 2007…"  *See* Ex. A (emphasis added).  The subpoena continues with more specific requests, including, "all correspondence, notes, memoranda… fee agreements, billing statements… work papers, telephone messages, e-mail messages…"  *See* Ex. A.  These requested documents would implicate the attorney-client privilege to the extent that they constitute confidential communications between Mr. Smith and Mr. Chopra.  Moreover, given the nature of the subpoena, it must be assumed that these sorts of communications will also be the topic of questioning at Mr. Smith's deposition.

### B.    Work Product Doctrine

Similarly, the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial ... [unless] they are otherwise discoverable under Rule 26(b)(1); and the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 (1975).

The Supreme Court in *Hickman v. Taylor, supra,* recognized that a lawyer in preparing the client's case, assembles information, sifts through what the lawyer considers to be relevant

10

facts, prepares "legal theories and plan[s] strategy, without undue and needless interference." This work, which has become known as counsel's "work product," is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and [in] countless other tangible and intangible ways." *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. The Supreme Court acknowledged the well-recognized policy against invading the privacy of an attorney's course of preparation. The Court held that a party may invade that privacy in search of relevant and nonprivileged facts only upon a showing of adequate justification. *Id.* at 512. The work-product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories. *Id.* at 511.

Given the above, "[d]isclosure of fact work-product may only be obtained by a third party who satisfies the 'substantial need/undue burden test' by demonstrating 1) a substantial need for the material; and 2) an inability to develop the information otherwise without undue hardship. In contrast, opinion work-product is subject to enhanced and heightened protection, which approaches absolute protection." *U.S. v. Graham*, 2003 WL 23198792 (D.Colo. 2003), *citing Frontier Ref., Inc. v. Gorman-Rupp Co.,* 136 F.3d 695, 702-03 (10th Cir. 1998); *see also* Fed.R.Civ.P. 26(b)(3)(A)(ii). However, opinion work product, such as an attorney's mental impressions, conclusions, opinions, or legal theories, receives special protection against disclosure. Fed.R.Civ.P. 26(b)(3)(B).

As discussed above, Defendants have in essence subpoenaed Mr. Smith's entire attorney file relating to this matter, including "all… notes, memoranda, legal research, factual research, files… billing statements, time sheets, work papers, telephone messages, e-mail messages, and

11

draft or final pleadings." *See* Ex. A.  On its face, the subpoena implicates documents protected from disclosure by the work product doctrine.  For example, time sheets and billing statements show to what topics Mr. Smith was dedicating time and resources, thereby disclosing his mental impressions on those topics he viewed as important to this case.  Similarly, his legal and factual research shows those topics to which Mr. Smith was focusing his efforts and thereby discloses his mental impressions of the case.  Likewise, telephone and e-mail messages show who Mr. Smith may have been conferring with regarding this matter and thereby potentially disclose his mental impressions of the case.  Furthermore, Defendants have made no attempt to avoid requesting "opinion work product" despite the clear case law stating that such work product is afforded heightened protection from disclosure.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the court issue a protective order prohibiting the deposition of and quashing the subpoena *duces tecum* issued to Brian Smith, Esq.

Respectfully submitted August 26, 2008

MONTGOMERY, KOLODNY,
AMATUZIO & DUSBABEK, L.L.P.

By:  *s/ Ryan C. Gill*
C. Michael Montgomery
Ryan C. Gill
1775 Sherman Street, 21st Floor
Denver, Colorado 80203
Telephone: 303-592-6600
mmontgomery@mkadlaw.com
rgill@mkadlaw.com

BRIAN D. SMITH, P.C.

By: *s/ Brian D. Smith*
Brian D. Smith, Esq.
BRIAN D. SMITH, P.C.
1125 Seventeenth Street, Suite 600
Denver, Colorado 80202
(303) 523-0900

ATTORNEYS FOR DILIP CHOPRA

**CERTIFICATE OF MAILING**

I hereby certify that on August 26, 2008, I electronically filed the foregoing **MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address, or if e-mail address is not available, send notification by U.S. Mail this date.

*Counsel for Defendant:*

Daniel M. Reilly, Esq.
Larry Pozner, Esq.
Kent Modesitt, Esq.
Katherine Roush, Esq.
REILLY POZNER LLP
511 Sixteenth Street, Ste. 700
Denver, Colorado 80202
kmodesitt@rplaw.com
dreilly@rplaw.com
lpozner@rplaw.com
kroush@rplaw.com

*s/ Faithe Charnow*
*fcharnow@mkadlaw.com*