IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02447-MSK-MEH

DILIP CHOPRA, an individual,

    Plaintiff,

v.

TOWNSEND, TOWNSEND AND CREW LLP, a California limited partnership,
DARIN GIBBY, an individual, and
CHAD HILYARD, an individual;

    Defendants.
_____

## ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**

    Before the Court is Plaintiff's Motion for Protective Order Regarding Defendants' First Set of Discovery to Plaintiff [filed October 10, 2008; docket #87]. This matter is briefed and has been referred to this Court for resolution [docket #88]. Oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated below, the Court orders Plaintiff's Motion for Protective Order Regarding Defendants' First Set of Discovery to Plaintiff be **granted**.

**I.    Background**

    Plaintiff filed this legal malpractice action against Defendants, his former attorneys, on November 21, 2007. Plaintiff asserts claims for negligence and breach of fiduciary duty under Colorado law based on Plaintiff's belief that Defendants improperly abandoned his patent application proceedings. (Docket #1 at 9, 12.) On March 19, 2008, Defendants filed a Motion to Dismiss contending Plaintiff's malpractice claims are barred by judicial estoppel due to the

bankruptcy proceeding Plaintiff initiated in March 2007.[1] (Docket #17 at 1-2.) Defendants argue Plaintiff should have disclosed the legal malpractice action he brings now to be included as an asset in the bankruptcy estate, making the bankruptcy trustee the real party in interest. Defendants contend Plaintiff's failure to "disclose the existence of either the patent applications or the malpractice claims as assets of the bankruptcy estate to the detriment of his creditors bar him (a) from pursuing this action and (b) from recovering damages for his undisclosed assets." (Docket #18 at 2-3.)

In response to Defendants' Motion to Dismiss, Plaintiff asserts an ignorance defense in that he had no knowledge of the legal malpractice claims at or before the time he filed for bankruptcy, therefore he is not precluded from bringing the present action. Plaintiff explains, "under Colorado law, [his] interest in this malpractice claim arose *after* discharge because he did not have knowledge of Defendants' conduct prior to discharge. [Furthermore], the patent applications themselves are not the subject of this lawsuit and whether or not they were scheduled in the bankruptcy is irrelevant because the applications became worthless as a result of Defendants' malpractice." (Docket #24 at 5.) In support of his response to Defendants' Motion to Dismiss, Plaintiff attached his own affidavit describing the sequence of events related to his case against Defendants. The affidavit included statements regarding when Plaintiff retained his present attorney, Mr. Brian Smith ("Smith"), and for what purposes he retained Smith. Plaintiff asserts his retention of Smith was "for purposes of

---

[1] In light of Defendants' Motion to Dismiss and Plaintiff's Response, the District Court bifurcated this proceeding and set an evidentiary hearing scheduled for February 2009 focused on Defendants' judicial estoppel defense. This order pertains specifically to the judicial estoppel portion of the bifurcated proceeding.

pursuing the patent applications in early September 2007," not for purposes of filing this legal malpractice action. (Docket #24-2 at 3-4.)

Defendants interpret Plaintiff's assertions in his affidavit regarding his retention of Smith to be an implied waiver of attorney-client privilege that otherwise would protect communications between Plaintiff and Smith. Defendants attempted to subpoena and depose Smith; however, Plaintiff filed a Motion for Protective Order and to Quash Subpoena on August 26, 2008, based on attorney-client privilege. (Docket #71.) Due to the fact that Defendants had not yet deposed Plaintiff, this Court issued an Order granting Plaintiff's Motion with leave for Defendants to re-serve the subpoena and notice deposition if warranted. (Docket #83.) The Court then heard the parties' arguments at a hearing on a Motion to Clarify filed by Defendants regarding the issues raised in Plaintiff's initial Motion for Protective Order, and also raised in the Motion at hand. (Docket #84.)

Plaintiff's Motion for Protective Order presently before the Court addresses Defendants' Requests for Admission numbered 40-45. Plaintiff bases his Protective Order request on the attorney-client privilege, the work product doctrine, and irrelevance. (Docket #87 at 2.) The six contentious Requests state as follows:

> Request #40: Admit that before the October 17, 2007 closure of Your bankruptcy proceeding You discussed with an attorney potential malpractice claims against Townsend.
>
> Request #41: Admit that before the October 17, 2007 closure of Your bankruptcy proceeding You discussed with Brian Smith, Esq., potential malpractice claims against Townsend.
>
> Request #42: Admit that before the August 6, 2007 discharge in Your bankruptcy proceeding You discussed with an attorney potential malpractice claims against Townsend.

Request #43: Admit that before the August 6, 2007 discharge in Your bankruptcy proceeding You discussed with Brian Smith, Esq., potential malpractice claims against Townsend.

Request #44: Admit that before the March 14, 2007 filing of Your bankruptcy proceeding You discussed with an attorney potential malpractice claims against Townsend.

Request #45: Admit that before the March 14, 2007 filing of Your bankruptcy proceeding You discussed with Brian Smith, Esq., potential malpractice claims against Townsend.

Defendants argue obtaining this particular discovery focused on the substance and communications of the relationship between Plaintiff and Smith at certain stages of the bankruptcy proceeding is necessary for Defendants to properly respond to Plaintiff's ignorance defense. (Docket #91 at 2.) Defendants contend Plaintiff's affidavit testimony impliedly waived attorney-client privilege, and now Plaintiff may not use "the substance and communications of his attorney-client relationship with [Smith] as a sword to establish [Plaintiff's] purported ignorance," while shielding such communications with attorney-client privilege and the work product doctrine. (*Id*.)

The parties raise two primary issues: first, whether the otherwise privileged communications between Plaintiff and Smith have been put "at issue" by Plaintiff with the effect of waiving any privilege protections, and second, if the privilege is waived, the definition of the proper temporal scope of investigation into such communications and related discovery.

**II.     Discussion**

    *A.     Fed. R. Civ. P. 26(c) Standard*

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue

4

burden or expense." Fed. R. Civ. P. 26(c). To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.").

The good cause standard of 26(c) is not met by conclusory statements. *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003). Instead, "the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to that moving party." *Id.* (citing *Exum v. United States Olympic Committee,* 209 F.R.D. 201, 206 (D. Colo. 2002)). As a general rule, the "good cause" calculation requires that the Court balance "the [moving] party's need for information against the injury which might result from unrestricted disclosure." *Exum,* 209 F.R.D at 206 (citations omitted). Additionally, the Court should consider any privacy interests and whether the case implicates issues important to the public. *Id*.

Plaintiff asserts attorney-client privilege establishes good cause supporting a protective order in this matter. The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The policy of protecting attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Id*. Therefore, Plaintiff satisfies the good cause standard of 26(c) because, as explained below, the communications Plaintiff seeks to be protected fall within the purview of attorney-client privilege.

5

## B. Choice of Law

At the hearing held June 19, 2008, Judge Krieger explained "the commencement of a bankruptcy case creates an estate which is comprised of all property wherever located and by whomever held . . . [T]his includes all legal and equitable interests of the debtor in property as of the commencement of the case. . . . A legal interest includes a cause of action belonging to the debtor at the commencement of the bankruptcy case, and it is state law that determines whether a cause of action exists and belongs to the debtor and therefore becomes property of the estate." (Docket #54 at 18.) *See also Peltz v. Shidler*, 952 P.2d 793, 796 (Colo. Ct. App. 1997) ("To determine whether plaintiff's state court legal malpractice suit was property of the estate, we must first determine whether, under applicable state law, [plaintiff] could have raised the claim as of the commencement of the bankruptcy case."). In Colorado, a legal malpractice action accrues once the plaintiff learns "facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney." *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) (citations omitted); *see also* Colo. Rev. Stat. Ann. 13-80-108(1) (West 2005) ("a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence.").

Federal Rule of Evidence 501 states in pertinent part, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." To clarify this Court's statement in its order issued October 2, 2008, the District Court did not conclusively determine Plaintiff's right to relief depends on resolving a

question of federal patent law, thereby establishing subject matter jurisdiction pursuant to § 28 U.S.C. 1338(a). (*See* Dockets #6, 83.) The District Court simply acknowledged Plaintiff had adequately pled federal jurisdiction. The advisory committee notes to Federal Rule of Evidence 501 explain, "State privilege law applies even in nondiversity, Federal question civil cases, where an issue governed by State substantive law is the object of the evidence." Therefore, even though Plaintiff asserts federal subject matter jurisdiction over its case-in-chief, the Court applies Colorado attorney-client privilege law to the issues at hand because the judicial estoppel defense asserted by Defendants turns on a question of Colorado law.

### C. *Attorney-Client Privilege*

As previously stated, the policy of protecting attorney-client privilege encourages "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. "The attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) (quoting *People v. Madera*, 112 P.3d 688, 690 (Colo. 2005); *see also Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001).

Defendants do "not dispute that the at-issue Requests for Admissions seek disclosures of communications otherwise protected by the attorney-client privilege." (Docket #91 at 5.) However, Defendants rightly point out that attorney-client privilege is neither absolute nor automatic. Defendants assert Plaintiff impliedly waived the privilege attached to the communications in dispute. "The burden of establishing that a particular communication is privileged rests on the party asserting the privilege," and "the burden of establishing such a waiver rests with the party seeking to

7

overcome the privilege." *Wesp*, 33 P.3d at 198 (citations omitted). Therefore, Defendants bear the burden of proving Plaintiff waived the attorney-client privilege otherwise protecting Plaintiff's communications with Smith.

### D. *Waiver of Attorney-Client Privilege*

The Colorado Supreme Court described two situations of implied waiver: "when a client asserts a claim or defense that focuses on advice given by the attorney," and "when a client discloses privileged communications to a third party." *Trujillo*, 144 P.3d at 543. Placing privileged communications "at issue," that is, by asserting "a claim or defense that depends on privileged information," impliedly waives such communications. *Id*. "The law will not permit a client to 'use as a sword the protection which is awarded him as a shield.'" *Id*. (citing *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 544 (Colo. 1989)).

To initially summarize the Court's belief concerning whether Plaintiff impliedly waived the privilege protecting his communications with Smith, the Court finds Plaintiff fits in neither of the implied waiver categories described by the Colorado Supreme Court. First, Plaintiff's assertion of ignorance is not based on the advice of Smith or another attorney; for example, in that Smith or another attorney failed to advise Plaintiff regarding the inclusion of any legal malpractice claim in his bankruptcy proceeding. In fact, none of the examples of "waiver" listed by Defendants constitute advice of counsel at all, but instead state the fact and purpose of Smith's retention. (*See* Docket #91 at 6.) Second, implied waiver by disclosure to a third party also is inapplicable, because again, the statements Defendants rely upon to demonstrate waiver are not confidential communications. Additionally, as further described below, Defendants correctly state the determination of judicial estoppel in this matter "requires resolution of what

8

[Plaintiff] knew about the facts underlying his claims and when he learned them." (*Id*.) This question does not inherently require stripping Plaintiff of his right to protect the confidential communications with his present counsel, as Defendants aptly demonstrate with a comprehensive description of already obtained direct and circumstantial evidence indicating Plaintiff's knowledge in Part A, Section Four of their Response to Plaintiff's Motion for Protective Order. (*See id*. at 9-13.)

Defendants rely on a three-prong test for establishing implied waiver as articulated by the *DiFede* Court.[2] 780 P.2d at 543-44 (cited by *People v. Madera*, 112 P.3d 688, 691-92 (Colo. 2005)). First, the "assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party." Second, "through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case." Third, applying "privilege would [deny] the opposing party access to information vital to his defense." *Id*. The *DiFede* Court adopted this analysis from the Nebraska Supreme Court, who described the "common denominator" to privilege exceptions, such as implied waiver, as "in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information

---

[2]In the *DiFede* case, the Colorado Supreme Court found Susan DiFede impliedly waived privileged attorney-client communications by her allegation that she reasonably relied on an attorney's incorrect statement of the law, which she then discussed with her subsequent attorney. The *DiFede* Court found, "it would be unfair for Susan to thrust her lack of knowledge of the correct state of the law into the litigation by her claim of fraudulent inducement while simultaneously retaining the attorney-client privilege." 780 P.2d at 544. The *DiFede* case is distinguished from the case at hand in that Plaintiff did not assert his ignorance of the legal malpractice claim derived from misplaced reliance on confidential communications, thereby putting those confidential communications "at issue" in this case.

would have been manifestly unfair to the opposing party." *League v. Vanice*, 221 Neb. 34, 44, 374 N.W.2d 849, 856 (Neb. 1985) (citation omitted).[3]

Defendants summarily assert Plaintiff meets the first prong simply by having filed suit. True, the Court recognizes filing a legal malpractice suit against former counsel would waive communications between the plaintiff and the former counsel sued, but Plaintiff in this matter does not contest waiver of his privileged communications with Defendants. (Docket #102 at 9 n. 1.) However, assuming *arguendo* filing a legal malpractice action against former counsel could implicate waiver of privileged communications with current counsel in a manner satisfying the first prong of the *DiFede* implied waiver test, Defendants still fail to meet the second and third prongs.

The second prong requires the party asserting privilege to "put the protected information at issue by making it relevant to the case." The key to this prong is the insertion of *protected* information. Defendants rely on the following to demonstrate Plaintiff placed his privileged communications with Smith "at issue" (Docket #91 at 6):

---

[3]In the *League* case, the Nebraska Supreme Court affirmed the trial court's decision to permit Defendant Vanice to question Plaintiff League's former attorney whether he had advised League regarding certain contentious transactions four years prior. The *League* Court allowed this implied waiver because League was "not permitted to thrust his lack of knowledge into the litigation as a foundation or condition necessary to sustain his claim against Vanice while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge." 374 N.W.2d at 856. The *League* case is distinguishable from the case at hand because the *League* Court did not indicate whether evidence of what League did or did not know could be obtained without waiving privilege. As Defendants thoroughly describe in their Response to Plaintiff's Motion for Protective Order, direct and circumstantial evidence of Plaintiff's knowledge has already been obtained and apparently analyzed by Defendants, leaving no need to waive Plaintiff's right to protect his privileged communications with Smith. (*See* Docket #91 at 9-13.)

- "I first spoke with Attorney Brian Smith on August 27, 2007 with respect to investigating the status of the '883 and '017." (4/8/2008 Chopra Aff., Doc. 24-1, at ¶ 14).
- "I officially retained Attorney Smith for purposes of pursuing the patent applications in early September 2007. At that time, I was unaware that TTC had negligently handled the '883 and '017. The reason that I retained Attorney Smith was to further prosecute the patent applications, not to pursue malpractice against TTC." (*Id.* at ¶ 14).
- "I did not know of TTC's malpractice during the course of my bankruptcy." (*Id.* at ¶ 13).
- "When I retained Attorney Brian Smith, our focus was on whether the patent applications could be revived." (5/5/2008 Supp. Chopra Aff., Doc. 39-1, at ¶ 7).
- "Chopra first met with [Smith] regarding trying to revive the '883 and '017 patent applications on August 27, 2007. Attorney Smith was retained for purposes of pursuing the patent applications in early September 2007." (Pl. Resp. Mot. to Dismiss, Doc. 24, at ¶ 7).
- "Chopra did not discover Defendants' negligence until after his bankruptcy discharge on August 6, 2007. Thus, Chopra's omission of the claim against TTC could not possibly have been deliberate or intentional." (*Id.* at ¶ 26)
- "Chopra was not aware of Defendants' malpractice and did not retain counsel until after the bankruptcy discharge. Not surprisingly, Defendants have no evidence that Chopra knew of his claims prior to discharge." (*Id.* at ¶ 29).

None of these listed statements contain "confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *Trujillo*, 144 P.3d at 542. Each statement pertains to the fact and purpose of Plaintiff's retention of Smith. Therefore, Defendants fail to meet the "protected information" requirement of the *DiFede* test's second prong. These statements do not implicate waiver of the content of discussions between Plaintiff and Smith regarding Smith's representation of Plaintiff, as sought by Defendants in the challenged Requests for Admission.

The *DiFede* test's third prong focuses on a fairness analysis when determining implied waiver by evaluating whether applying attorney-client privilege "would [deny] the opposing

11

party access to information vital to his defense." In their Response to Plaintiff's Motion for Protective Order, Defendants make a persuasive case articulating facts and describing evidence crucial to establishing their raised defense of judicial estoppel. For example, Defendants identify the '017 patent application file as including "documents at the heart of both Chopra's malpractice claims and his knowledge of facts central to the judicial estoppel determination." (Docket #91 at 10.) In addition to hard evidence such as the '017 file, Defendants rely on the basic chronology of events surrounding the patent applications, Plaintiff's bankruptcy proceeding, and this legal malpractice action, as well as the record of contacts and communications made by Plaintiff to Defendants regarding these issues, and the record of contacts and communications made by Plaintiff to the United States Patent and Trademark Office. Defendants conclude, based on their explanation of the listed direct and circumstantial evidence in their Response, that "[Plaintiff] became aware [of the malpractice causes of action] no later than July (*before* the bankruptcy discharge)." (Docket #91 at 13.) Accordingly, Defendants address their own failure to meet the *DiFede* test's third prong directly, if not consciously, in their Response, in that waiver of the attorney-client privilege protecting communications between Plaintiff and Smith, although imaginably helpful, is certainly not "vital" to the judicial estoppel defense.

### III. Scope of Protective Order

Defendants do not satisfy the burden of establishing Plaintiff impliedly waived the privilege protecting his confidential communications with Smith, therefore the Court orders a protective order precluding Defendants from obtaining information protected by attorney-client privilege. This protective order is limited to confidential matters as communicated between

Plaintiff and Smith "in the course of obtaining counsel, advice, or direction with respect to [Plaintiff's] rights or obligations." *See Trujillo*, 144 P.3d at 542. This order does not preclude Plaintiff from stating the fact or purpose of his retention of Smith, because such fact or statement of purpose does not constitute a confidential communication. The Court finds Defendants' Requests for Admission numbered 40, 41, 42, 43, 44, and 45 are barred because they seek the content of Plaintiff's discussions with Smith or "an attorney," and such content is protected by attorney-client privilege.

**IV.     Conclusion**

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Motion for Protective Order Regarding Defendants' First Set of Discovery to Plaintiff [October 10, 2008; docket #87] is **GRANTED** consistent with the scope of this Court's Order.

Dated at Denver, Colorado, this 25th day of November, 2008.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge