IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02447-MSK-MEH

DILIP CHOPRA, an individual,

  Plaintiff,

v.

TOWNSEND, TOWNSEND AND CREW LLP, a California limited partnership,
DARIN GIBBY, an individual, and
CHAD HILYARD, an individual,

  Defendants.

_____

**ORDER ON DEFENDANTS' MOTION TO COMPEL**
_____

**Michael E. Hegarty, United States Magistrate Judge**

  Before the Court is Defendants' Motion to Compel Discovery Responses [filed October 24, 2008; docket #95].  The matter is briefed and has been referred to this Court for resolution [docket #96].  Oral argument would not materially assist the Court in adjudicating this motion.  For the reasons stated below, the Court orders Defendants' Motion to Compel Discovery Responses is **denied**.

**I. Background**

  Plaintiff filed this legal malpractice action against Defendants, his former attorneys, on November 21, 2007.  Plaintiff asserts claims for negligence and breach of fiduciary duty under Colorado law based on Plaintiff's belief that Defendants improperly abandoned his patent application proceedings.  (Docket #1 at 9, 12.)  On March 19, 2008, Defendants filed a Motion to Dismiss contending Plaintiff's malpractice claims are barred by judicial estoppel due to the

bankruptcy proceeding Plaintiff initiated in March 2007.[1]  (Docket #17 at 1-2.)  Defendants

argue Plaintiff should have disclosed the legal malpractice action he brings now to be included

as an asset in the bankruptcy estate, making the bankruptcy trustee the real party in interest.

Defendants contend Plaintiff's failure to "disclose the existence of either the patent applications

or the malpractice claims as assets of the bankruptcy estate to the detriment of his creditors bar

[sic] him (a) from pursuing this action and (b) from recovering damages for his undisclosed

assets."  (Docket #18 at 2-3.)

       In response to Defendants' Motion to Dismiss, Plaintiff asserts an ignorance defense in

that he had no knowledge of the legal malpractice claims at or before the time he filed for

bankruptcy, therefore he is not precluded from bringing the present action.  Plaintiff explains that

"under Colorado law, [his] interest in this malpractice claim arose *after* discharge because he did

not have knowledge of Defendants' conduct prior to discharge.  [Furthermore], the patent

applications themselves are not the subject of this lawsuit and whether or not they were

scheduled in the bankruptcy is irrelevant because the applications became worthless as a result of

Defendants' malpractice."  (Docket #24 at 5 (emphasis in original).)  In support of his response

to Defendants' Motion to Dismiss, Plaintiff attached his own affidavit describing the sequence of

events related to his case against Defendants.  The affidavit included statements regarding when

Plaintiff retained his present attorney, Mr. Brian Smith ("Smith"), and for what purposes he

retained Smith.  Plaintiff contends his retention of Smith was "for purposes of pursuing the

---

[1]In light of Defendants' Motion to Dismiss and Plaintiff's Response, the District Court
bifurcated this proceeding and set an evidentiary hearing scheduled for February 2009 focused on
Defendants' judicial estoppel defense.  This order pertains specifically to the judicial estoppel
portion of the bifurcated proceeding.

patent applications in early September 2007," not for purposes of filing this legal malpractice action.  (Docket #24-2 at 3-4.)

Defendants interpret Plaintiff's assertions in his affidavit regarding his retention of Smith to be an implied waiver of attorney-client privilege that otherwise would protect communications between Plaintiff and Smith.  Defendants attempted to subpoena and depose Smith; however, Plaintiff filed a Motion for Protective Order and to Quash Subpoena on August 26, 2008, based on attorney-client privilege.  (Docket #71.)  Due to the fact that Defendants had not yet deposed Plaintiff, this Court issued an Order granting Plaintiff's Motion with leave for Defendants to re-serve the subpoena and notice deposition if warranted.  (Docket #83.)  The Court then heard the parties' arguments at a hearing on a Motion to Clarify filed by Defendants regarding the issues raised in Plaintiff's initial Motion for Protective Order, and also raised in the Motion at hand. (*See* Dockets #84, 95.)

Subsequently, in adjudicating Plaintiff's second Motion for Protective Order Regarding Defendants' First Set of Discovery to Plaintiff, the Court concluded Defendants did not satisfy the burden of establishing Plaintiff impliedly waived the privilege protecting his confidential communications with Smith and ordered a protective order precluding Defendants from obtaining information protected by the attorney-client privilege.  (Dockets #87, 107.)  The Court limited the protective order to confidential matters as communicated between Plaintiff and Smith "in the course of obtaining counsel, advice, or direction with respect to [Plaintiff's] rights or obligations."  *See People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) (citation omitted).  The order does not preclude Plaintiff from stating the fact or purpose of his retention of Smith, because such fact or statement of purpose does not constitute a confidential communication.

3

Defendants' Motion to Compel Discovery Responses presently before the Court reiterates the same waiver argument contested by the parties in the previous filings.  This Motion seeks to compel Plaintiff's disclosure of the following four Requests for Production and two Interrogatory responses (Docket #95 at 4-10):

> Townsend's Request for Production of Documents No. 1:  All documents relating to communications with Brian Smith, Esq., and Brian Smith, Esq.'s representation of You, prior to the closure of Your bankruptcy proceeding on October 17, 2007, including, without limitation, all correspondence, information exchanged, notes, memoranda, legal research, factual research, files, fee agreements, billing statements, time sheets, work papers, telephone messages, e-mail messages, and draft or final pleadings.

> Townsend's Request for Production of Documents No. 5:  All documents that relate to, address, allude to, discuss, or otherwise reference Your potential causes of action against Townsend, including the legal or factual bases for those causes of actions, prior to the closure of Your bankruptcy proceeding on October 17, 2007.

> Townsend's Request for Production of Documents No. 6:  All documents that relate to communications between You and any other person or entity regarding the Patent Applications.

> Townsend's Request for Production of Documents No. 7:  All documents that expressly or implicitly reference the Patent Applications.

> Townsend's Interrogatory No. 1:  Identify all attorneys with whom You have communicated prior to the closure of Your bankruptcy proceeding on October 18, 2007, relating to the Patent Application, including a description of the participants in the communication, and the date, manner, location and subject matter of the communication.

> Townsend's Interrogatory No. 4:  Identify all individuals or entities not described in Your responses to Interrogatory Nos. 1-3 above with whom You have communicated regarding the Patent Applications, including the date, participants, manner of communication, location of communication, and subject matter of the communication.

4

## II.     Discussion

### A.     *Choice of Law*

As determined in the November 25, 2008 order on Plaintiff's second Motion for

Protective Order Regarding Defendants' First Set of Discovery, the Court applies Colorado

attorney-client privilege law to the issues at hand because the judicial estoppel defense asserted

by Defendants turns on a question of Colorado law.  (Docket #107 at 6-7.)  However, unlike

attorney-client privilege, a uniform federal standard governs the work product doctrine, even in

diversity cases.  *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc*., 136 F.3d 695, 702 (10th Cir.

1998).  The work-product doctrine as incorporated into the Federal Rules of Civil Procedure

provides extensive protection to the "mental impressions, conclusions, opinions, or legal

theories" of an attorney concerning the litigation in question.  Fed. R. Civ. P. 26(b)(3).

As established by the Supreme Court, "the work-product doctrine shelters the mental

processes of the attorney, providing a privileged area within which he can analyze and prepare

his client's case."  *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006)

(citing *U.S. v. Nobles*, 422 U.S. 225, 238 (1975)).  Work product may be categorized as opinion,

which may be considered absolutely privileged, or non-opinion, which "may be discoverable

under appropriate circumstances."  *Id*. (citation omitted).  Similar to the attorney-client privilege,

the work-product doctrine is neither absolute nor comprehensive as to all communications

between an attorney and his or her client.

### B.     *Legal Standard*

The scope of evidence subject to discovery under the federal rules is broad:

Parties may obtain discovery regarding any matter, not privileged, that is relevant
to the claim or defense of any party, including the existence, description, nature,

5

> custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial of the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).  The operative portion of this rule most applicable to the facts at hand is "any matter, *not privileged*" (emphasis added).  Defendants emphasize the same arguments they presented in contesting Plaintiff's second Motion for Protective Order Regarding Defendants' First Set of Discovery, in that Plaintiff used the "substance and communications of his attorney-client relationships as a sword" thereby impliedly waiving any protections due.  (Docket #95 at 3.)  However, the Court determined in its November 25, 2008 protective order that Plaintiff did not impliedly waive attorney-client privilege in the manner contemplated by Defendants, and consistent with the law and reasoning in that order, the Court concludes Plaintiff also did not impliedly waive work-product doctrine protections.

### C.      *Temporal Scope of Discovery*

At the hearing in this matter held June 19, 2008, Judge Krieger explained "the commencement of a bankruptcy case creates an estate which is comprised of all property wherever located and by whomever held . . . [T]his includes all legal and equitable interests of the debtor in property as of the commencement of the case. . . .  A legal interest includes a cause of action belonging to the debtor at the commencement of the bankruptcy case, and it is state law that determines whether a cause of action exists and belongs to the debtor and therefore becomes property of the estate."  (Docket #54 at 18.)  *See also Peltz v. Shidler*, 952 P.2d 793, 796 (Colo. Ct. App. 1997) ("To determine whether plaintiff's state court legal malpractice suit was property of the estate, we must first determine whether, under applicable state law, [plaintiff] could have

6

raised the claim as of the commencement of the bankruptcy case.").  In Colorado, a legal

malpractice action accrues once the plaintiff learns "facts that would put a reasonable person on

notice of the general nature of damage and that the damage was caused by the wrongful conduct

of an attorney." *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) (citations omitted); *see also*

Colo. Rev. Stat. Ann. 13-80-108(1) (West 2005) ("a cause of action for injury to person,

property, reputation, possession, relationship, or status shall be considered to accrue on the date

both the injury and its cause are known or should have been known by the exercise of reasonable

diligence.").

A recurring point of contention in this ongoing discovery dispute is whether the relevant

"snapshot" date of Plaintiff's knowledge regarding this legal malpractice action is the March 14,

2007 commencement of Plaintiff's Chapter 7 bankruptcy case or the October 17, 2007

bankruptcy closure.  Plaintiff represents to the Court that his "interest in this malpractice claim

arose after discharge [of his Chapter 7 bankruptcy proceeding] because he did not have

knowledge of Defendants' conduct prior to discharge," and the date of relevance is what Plaintiff

knew on or before March 14, 2007.  (Docket #24 at 5.)  Defendants argue Plaintiff's legal

malpractice claim "existed years before he filed his bankruptcy petition," and Plaintiff had a

continuing obligation to amend his bankruptcy proceeding to include this legal malpractice

action on or before the October 17, 2007 closure of bankruptcy.  (Docket #91 at 18.)  For the

reasons below, the Court holds discovery in this matter is limited by the March 14, 2007 date of

relevance.

Plaintiff and Defendants each submit case law from this and other jurisdictions

supporting their respective positions, but in essence their positions are compatible.  Plaintiff

contends that the bankruptcy trustee gains control of the Chapter 7 debtor's property as of the commencement of the bankruptcy case, and property acquired after the commencement of the case remains in the possession of the debtor.  (Docket #102 at 5-6.)  Defendants argue that a debtor endures an ongoing obligation to amend the bankruptcy proceeding to include such property in existence at the commencement of the case but not initially disclosed.  (Docket #91 at 17-19.)  Both assertions are consistent with the cited law, and both assertions turn on the point of what property existed at the commencement of the bankruptcy proceeding.

Likewise, if Plaintiff in this matter knew or should have known of the legal malpractice action "property" at the commencement of the bankruptcy proceeding, his obligation to disclose such property would continue through the bankruptcy until its closure.  In other words, whether Plaintiff knew or should have known of the malpractice claim at the closure of bankruptcy is immaterial in this case, because the legal malpractice claim would be part of the bankruptcy proceeding only if Plaintiff knew or should have known of the claim at the commencement on March 14, 2007, when his existing property became property of the bankruptcy trustee. Therefore, the March 14, 2007 date of bankruptcy commencement limits the temporal scope of Defendant's discovery into what Plaintiff knew or should have known.

## III.    Analysis

The Court's November 25, 2008 protective order protects confidential matters as communicated between Plaintiff and Smith "in the course of obtaining counsel, advice, or direction with respect to [Plaintiff's] rights or obligations."  (Docket #107 at 12-13.)  As previously stated, the work product doctrine provides extensive protection to the "mental impressions, conclusions, opinions, or legal theories" of an attorney concerning the litigation in

question.  Although "production of work-product material during discovery waives a work-product objection," no such production is alleged, and the Court has already determined Defendants' contention of Plaintiff's implied waiver fails.  *In re Qwest*, 450 F.3d at 1186.

In Defendants' Motion presently before the Court, Defendants included Plaintiff's statements in his responses to Townsend's Requests for Production that "all non-privileged documents relevant to the first phase of this bifurcated case were previously disclosed and provided to counsel.  Relevant privileged documents were identified on a privilege log." (Docket #95 at 5-8.)  Regarding Townsend's two disputed Interrogatories, Plaintiff provided information not privileged and consistent with the relevant date of Plaintiff's bankruptcy commencement, as demonstrated in Defendants' Motion.  (*Id*. at 9-10.)

In light of the November 25, 2008 protective order, the Court's determination that Plaintiff did not impliedly waive the work-product doctrine, the Court's conclusion that March 14, 2007 is the operative relevant date in this matter, and Plaintiff's responses to Townsend's contentious Requests for Production and Interrogatories, the Court denies Defendants' Motion. This order is without prejudice regarding challenge by Defendants to documents Defendants reasonably believe are improperly listed in Plaintiff's privilege log.  However, the Court emphasizes to the parties that the issue of implied waiver has already been determined by the Court to be inapplicable in this matter, as stated in this order and in the November 25, 2008 protective order.

## IV.    Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Defendants' Motion to Compel Discovery Responses [filed October 24, 2008; docket #95] is **DENIED**.

Dated at Denver, Colorado, this 30th day of December, 2008.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge